BREAUX, C. J.
Plaintiff, in its petition, claims that defendant owes it the sum of $2,950.66, with legal interest thereon from judicial demand, balance due by defendant.
Plaintiff bases its claim on an alleged sale of personal property made by it to defendant. It avers that it delivered portions of the property as called for by defendant; that another portion remained on hand, the delivery of which was never sought by defendant.
It is for the latter that plaintiff sues.
The defendant, on the other hand, avers, in substance, that he never consented to buy this merchandise outright; that it was only agreed that he should use his best endeavors to dispose of all of plaintiff's stock which had been in his charge whilst he had charge of one of the departments of plaintiff’s business, in New Orleans. Defendant says that he did use his best endeavors, and that he did sell a portion of the goods; that he made several trips to Yucatan and as far south as South America, in connection with his business as vendor of railroad construction materials and other similar materials.
He particularly denies that he bought the merchandise which plaintiff claims to have sold to him.
We will here state that plaintiff was a commercial firm dealing in iron and other merchandise of steel. They wished to quit business, and to that end to liquidate and close up its business affairs.
The defendant had been one of its clerks in charge of one of its departments for a number of years; but on April 1, 1902, defendant severed his connection with plaintiff and thereafter engaged in the supply business in his own name and on his own account. It was then that plaintiff and defendant entered into an agreement with the view of disposing of plaintiff’s stock.
Portions of this stock, the defendant testified, was not of the standard size, and, in consequence, it was not an easy matter to dispose of.
Correspondence took place between the plaintiff and defendant, which we will freely refer to, as it is construed by plaintiff as evidence of a sale, while, on the other hand, the defendant insists that he never made an absolute agreement to buy the property in question; that he only agreed to buy to the extent needful to fill orders which he might place.
The first of the correspondence is dated May 20, 1903, addressed by defendant to plaintiff, in which he states that plaintiff had agreed to “reserve for orders closed by me all of the material shown on page 89 of the *1062 plaintiff’s stock book, consisting of 6,176 ties, weighing 12 pounds each; also material on page 95, representing 4,800 ties of same weight, as well as all ties of sundry length, at the Morden Frog & Crossing Works; also material entered on page 159, consisting of 1,789 ties, weighing approximately 10 pounds -each; 54 kegs of bolts, entered on page 161, containing 1,500 bolts in each keg; the ■switch material entered on page 167 of the same book; 1,920 ties on page 171; 1,600 bolts, 16 kegs, page 200; approximately 5,476 ties on page 257, weighing 6t4 pqunds; 3,200 bolts in 32 kegs, page 283; 8,163 ties, weighing 7 pounds each, page 291; 3,200 steel tie plates in 32 kegs, page 338; and all the switches shown on page 340.”
All of this property was listed in one stock book, with which we infer defendant was quite familiar, as he had had charge of that department.
From the foregoing it is evident that the property was all fully specified. In this letter of May 20th the defendant also states, quoting:
“The balance of the material yon are going to use your best endeavors to dispose of, and, should I need any of this material from time to time, I will, before purchasing elsewhere, ascertain if you have it and will give you the preference thereon.”
And further the defendant goes on to state that:
“As per our conversation, you are going to endeavor to sell the balance of the stock on hand. And I take it for granted that I have fully complied with the last paragraph of our agreement of April, 1902; that I shall endeavor to sell yopr material, as per our agreement, and in all respects comply in my part thereto.”
The issues before us are confined to the specified articles in a letter of May 20, 1903, from which we before quoted.
We are of the opinion that there is no vinculum juris between plaintiff and defendant as relates to other items of property than those mentioned in the letter of May 20,1903. This disposes of all questions relating to the property not specified in that letter.
To return to the items of property specified in the letter of May 20th, and in regard to which there seems to have been a positive agreement between plaintiff and defendant, we find that the defendant wrote to plaintiff as follows:
“Unless you are willing that the material as included in my letter of May 20th shall stand for orders booked by me, to be paid for by me at as much more than thirty four dollars per ton at Progresso as I can afford to pay for it as the returns are received from my drafts, I will dismiss the material entirely and let you dispose of it to suit yourself.”
We understand that plaintiff agreed that this merchandise “should stand for orders” placed by defendant, and held the goods subject to defendant’s order, but that defendant did not call for them.
The statement of the facts of the case would not be complete unless the following, touching the balance claimed by plaintiff and the asserted price, be here included:
“W. W. Bierce, Ltd., v. Frank Davies, No. 74,417, Civil District Court, Div. A. In accordance with the understanding and agreement had on the trial of this case, it is stipulated by and between the undersigned counsel, representing plaintiff and defendant, that of the materials set forth in defendant’s letter of May 20, 1903, heretofore offered in evidence, and marked for identification P. L., there remains in the hands of plaintiff 16, 141 ties, weighing 169,402 pounds, or 75i402/2240 gross tons, for which defendant is liable if he is liable at all; at the rate of $27.34 per ton, this being $34.-06 per ton, less the freight per ton to Progress© ; in accordance with defendant’s letter of May 21, 1903, marked for identification ‘P, 3.’
“[Signed] Fenner, Henderson & Fenner,
“Attorneys for Plaintiff.
“Saunders & Gurley,
“Attorneys for Defendant.”
In one of the letters, defendant specially refers to an agreement “to reserve for orders closed by me.” This is followed by other expressions, süch as: “I cannot agree to let you sell the material which I am obliged to sell.” “I have sold various materials detailed to you and will need this to fill orders”'—■ thereby clearly indicating that it was his in *1064 tention to have this merchandise reserved.
We understand from the evidence that it was reserved in accordance with this request.
The property had been specified, the price had been agreed upon, and under the terms of the contract there was sufficient delivery to complete the sale.
We will again go over the business negotiations between the parties. In the letter of May 20, 1903, to which we have already specially referred, defendant wrote to plaintiff that:
“You agreed to reserve for orders closed by me all the material shown on page 89 of the stock book,” etc.
It will be observed that defendant, according to his statement, had already “closed orders.” The matter of orders in so far as he was concerned was a fait accompli.
The testimony of Columbus Bierce is (and it is not contradicted):
“Q. That of this material referred to above, which was enumerated in Mr. Davies’ letter of May 20, 1903, you have never sold or disposed of any of that material except to Mr. Davies? A. No one except Mr. Davies. By Mi-. Saunders: Did you make any effort to do so? A. No. By Mr. Fenner: Q. Why? A. Because the matter was left in Mr. Davies’ hands, according to agreement.”
That agreement, we. understand, was to hold it for Mr. Davies.
The following agreement between counsel was copied in the record:
“The parties agree to examine the books and invoices out of court and to determine from them how much of the material, mentioned in the letter of May 20, 1903, has been taken and paid for; and the defendant is to be liable, if at all, only for the balance remaining at the rate of $27.31 per gross ton, which is admitted to be the correct price for which the defendant is to be charged, if he is to be charged at all.”
We return to the letter of May 20th and therein find it stated that plaintiffs had closed their negotiations touching the enumerated articles.
Further on in the record, quoting:
“It is admitted that the defendant is liable, if at all, for the quantities stated in the letter of May 20, 1903, and it is a matter of compilation to determine from-these invoices how much, remains unsold.”
Defendant as a witness does not specially deny the negotiations alleged. He admits that he had used all the materials enumerated in the letter of May 20, 1903, with the exception of some 16,000 steel cross-ties, which, as we understand, are covered by the letter of May 20th.
True, he stated that he could not sell the-remainder; that is, the 16,000 steel cross-ties. Nonetheless, he had ordered them, they were kept for him, the price was fixed, and the articles enumerated.
He further states that all that had already been shipped out was of a standard character, and that that which is still on hand is nonstandard. But the difficulty which confronts him is that he did not agree, as far as the record discloses, to take only the standard material; for all we know, the nonstandard was included as well. As to the latter he says he may not find a customer within six months or he may find one to-morrow.
He also testified about stock unsalable,, which he would not carry in stock, which he exerted himself to sell and could not sell.
All of these things are not provided for in the agreement which was entered into. The defendant made an absolute purchase, which excludes all idea of nullity because of the asserted nonstandard material.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed; and it is now ordered, adjudged, and decreed that the plaintiffs recover of defendant the sum of $2,063.90, with 5 per cent, interest from judicial demand, and that defendant pay cost of both courts.
NIOHOLLS, J., absent